**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| SEMCRUDE, L.P., <u>et al.</u>, | ) | Case No. 08-11525 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| ARROW OIL & GAS, INC.; BRADEN- | ) | Adversary No. 10-51825 |
| DEEM, INC.; CASEY MUSGROVE OIL | ) | Related to Adv. Docket No. 4 |
| COMPANY, INC.; CHAPARRAL ENERGY, | ) | |
| L.L.C.; CMX, INC.; CRAWLEY | ) | |
| PETROLEUM CORPORATION; DC | ) | |
| ENERGY, INC.; DUNCAN OIL | ) | |
| PROPERTIES, INC.; DUNNE EQUITIES, | ) | |
| INC.; FAIRFIELD OIL & GAS | ) | |
| CORPORATION; THE GLOCO, L.L.C.; | ) | |
| GMX RESOURCES, INC.; GROUND | ) | |
| DEVELOPMENT COMPANY; JACK | ) | |
| EXPLORATION, INC.; KEITH F. WALKER | ) | |
| OIL & GAS COMPANY, L.L.C.; KINGERY | ) | |
| DRILLING COMPANY, INC.; LANCE | ) | |
| RUFFEL OIL & GAS CORPORATION; | ) | |
| LARIO OIL & GAS COMPANY; LITTLE | ) | |
| BEAR RESOURCES, L.L.C.; MCCOY | ) | |
| PETROLEUM CORPORATION; MESA | ) | |
| EXPLORATION COMPANY, INC.; | ) | |
| MUSGROVE ENERGY, INC.; MUSTANG | ) | |
| FUEL CORPORATION; NYTEX ENERGY, | ) | |
| L.L.C.; OKLAHOMA OIL & GAS | ) | |
| MANAGEMENT, INC.; RJ SPERRY | ) | |
| COMPANY; SHORT & SHORT, L.L.C.; | ) | |
| STEPHENS & JOHNSON OPERATING | ) | |
| COMPANY; TEMPEST ENERGY | ) | |
| RESOURCES, L.P.; TRIPLEDEE DRILLING | ) | |
| COMPANY, INC.; TRIPOWER | ) | |
| RESOURCES, INC.; VEENKER | ) | |
| RESOURCES, INC.; and WELLCO | ) | |
| ENERGY, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |

v.                                              )
                                                )
J. ARON & COMPANY; BP OIL SUPPLY                )
COMPANY; CONOCOPHILLIPS                          )
COMPANY; PLAINS MARKETING G.P.,                  )
INC.; and PLAINS MARKETING, L.P.,               )
                                                )
            Defendants.                          )
                                                )
_____         )
                                                )
ANSTINE & MUSGROVE, INC.; BLAKE                  )    Adversary No. 10-51797
EXPLORATION, L.L.C.; CALVIN NOAH;               )    Related to Adv. Docket No. 3
CENTRAL OPERATING, INC.; CLARK                   )
EXPLORATION COMPANY; CMX, INC.;                  )
CORAL COAST PETROLEUM, L.C.;                     )
DAVIS PETROLEUM, INC.; DAYSTAR                   )
PETROLEUM, INC.; D.E. EXPLORATION,              )
INC.; DK OPERATING, INC.; DOUBLE                 )
EAGLE EXPLORATION, INC.; DRILLERS               )
& PRODUCERS, INC.; DUNNE EQUITIES,              )
INC.; GRA EX, L.L.C.; GREAT PLAINS              )
ENERGY, INC.; H I, INC.; HERMAN L.              )
LOEB, L.L.C.; HUTCHINSON OIL                     )
COMPANY, LLC; J&D INVESTMENTS,                   )
L.L.C.; JACK EXPLORATION, INC.; KLM             )
EXPLORATION COMPANY, INC.; L&J OIL              )
PROPERTIES, INC.; LANDMARK                       )
RESOURCES, INC.; LD DRILLING, INC.;             )
MCCOY PETROLEUM CORPORATION;                     )
MCGINNESS OIL COMPANY OF                         )
KANSAS; MID-CONTINENT ENERGY                     )
CORPORATION; MOLITOR OIL, INC.;                  )
MULL DRILLING COMPANY, INC.;                     )
MURFIN DRILLING COMPANY, INC.;                   )
MUSGROVE ENERGY, INC.; OIL                       )
COMPANY OF AMERICA, INC.; OSBORN                 )
HEIRS COMPANY, LTD.; PICKRELL                    )
DRILLING COMPANY, INC.; PROLIFIC                )
RESOURCES, L.L.C.; RAMA OPERATING               )
COMPANY, INC.; RANDON PRODUCTION                 )
COMPANY, INC.; RED OAK ENERGY,                   )
INC.; RITCHIE EXPLORATION, INC.;                 )
ROSS HOENER, INC.; SEEKER, L.L.C.;              )
TGT PETROLEUM CORPORATION;                       )

2

THOROUGHBRED ASSOCIATES, L.L.C.; )
THREE-D RESOURCES, INC.; VEENKER )
RESOURCES, INC.; VESS OIL )
CORPORATION; VIKING RESOURCES, )
INC.; VINCENT OIL CORPORATION; V.J.I. )
NATURAL RESOURCES, INC.; W.D. )
SHORT OIL COMPANY, L.L.C.; )
WELLSTAR CORPORATION; WHITE )
EXPLORATION, INC.; and WHITE PINE )
PETROLEUM CORPORATION, )
 )
    Plaintiffs, )
 )
   v. )
 )
J. ARON & COMPANY; BP OIL SUPPLY )
COMPANY; CONOCOPHILLIPS )
COMPANY; PLAINS MARKETING G.P., )
INC.; and PLAINS MARKETING, L.P., )
 )
    Defendants. )
_____ )
 )
ARROW OIL & GAS, INC.; BRADEN- ) Adversary No. 10-51828
DEEM, INC.; CASEY MUSGROVE OIL ) Related to Adv. Docket No. 4
COMPANY, INC.; CHAPARRAL ENERGY, )
L.L.C.; CMX, INC.; CRAWLEY )
PETROLEUM CORPORATION; DC )
ENERGY, INC.; DUNCAN OIL )
PROPERTIES, INC.; DUNNE EQUITIES, )
INC.; FAIRFIELD OIL & GAS )
CORPORATION; THE GLOCO, L.L.C.; )
GMX RESOURCES, INC.; GROUND )
DEVELOPMENT COMPANY; JACK )
EXPLORATION, INC.; KEITH F. WALKER )
OIL & GAS COMPANY, L.L.C.; KINGERY )
DRILLING COMPANY, INC.; LANCE )
RUFFEL OIL & GAS CORPORATION; )
LARIO OIL & GAS COMPANY; LITTLE )
BEAR RESOURCES, L.L.C.; MCCOY )
PETROLEUM CORPORATION; MESA )
EXPLORATION COMPANY, INC.; )
MUSGROVE ENERGY, INC.; MUSTANG )
FUEL CORPORATION; NYTEX ENERGY, )

L.L.C.; OKLAHOMA OIL & GAS                              )
MANAGEMENT, INC.; RJ SPERRY                       )
COMPANY; SHORT & SHORT, L.L.C.;            )
STEPHENS & JOHNSON OPERATING               )
COMPANY; TEMPEST ENERGY                         )
RESOURCES, L.P.; TRIPLEDEE DRILLING         )
COMPANY, INC.; TRIPOWER                             )
RESOURCES, INC.; VEENKER                            )
RESOURCES, INC.; and WELLCO                        )
ENERGY, INC.,                                                   )
                                                                           )
                     Plaintiffs,                                      )
                                                                           )
          v.                                                             )
                                                                           )
CALCASIEU REFINING COMPANY;                 )
CHEVRON USA, INC.; CIMA ENERGY             )
LTD.; CIMARRON GATHERING, L.P.;             )
CIMARRON TRANSPORTATION, L.L.C.;          )
COFFEYVILLE RESOURCES REFINING &        )
MARKETING, L.L.C.; CP ENERGY L.L.C.;       )
CRUDE MARKETING &                                     )
TRANSPORTATION, INC.; DELEK                      )
REFINING LTD.; HUSKY MARKETING &         )
SUPPLY COMPANY; INTERSTATE                      )
PETROLEUM CORPORATION;                            )
NATIONAL COOPERATIVE REFINERY             )
ASSOCIATION; OASIS                                        )
TRANSPORTATION & MARKETING                    )
CORPORATION; OCCIDENTAL ENERGY          )
MARKETING, INC.; SHELL TRADING               )
(US) COMPANY; SUNOCO LOGISTICS             )
PARTNERS, L.P.; TEPPCO CRUDE G.P.,           )
L.L.C.; VALERO MARKETING & SUPPLY        )
COMPANY; and VENTURA REFINING &          )
TRANSMISSION, L.L.C.,                                    )
                                                                           )
                     Defendants.                                    )
_____  )

# OPINION[1]

Before the Court are three motions to abstain, retransfer, and remand. The motions have been filed by various producers of oil and gas (the "Producers") who sold oil and gas to the Debtors shortly before they filed for bankruptcy protection in this Court. By the motions, the Producers ask this Court to retransfer and remand to state court three actions that have been removed and thereafter transferred to this District by federal judges in Oklahoma and Kansas and then referred to this Court, or alternatively, to abstain from hearing these actions in favor of the courts in which they were initially filed. Because the Court finds that it has "related-to" subject matter jurisdiction over the Producers' claims against the Tender Parties[2] and the Claim Parties, the Court will not retransfer and remand the actions that implicate these claims. The Court also finds that abstention does not apply to those actions, such that the claims against the Tender Parties and the Claim Parties will therefore be heard in this Court. However, the Court finds that it lacks "related-to" jurisdiction over the claims against the No-Claim Parties. Because the actions at bar against the Non-Tender Parties implicates the Producers' claims against both the No-Claim Parties and the Claim Parties, the Court will retain this action but dismiss the claims against the No-Claim Parties therein.[3] Dismissal will be without prejudice to the plaintiffs' right

---

[1]     This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that this Court's jurisdiction is determined to be within the parameters of 28 U.S.C. § 157(c)(1), this Opinion and the accompanying Order shall be deemed to be the Court's proposed findings of fact and conclusions of law.

[2]     Capitalized terms used in this section are defined infra.

[3]     The Court will dismiss the claims asserted by the Producers against the No-Claim Parties that are included in adversary proceeding 10-51828. The Court will thereafter retain this action for the purpose of adjudicating the Producers' claims against the Claim Parties included therein.

to prosecute such claims in the court in which this action was initially filed.  The Court also finds

that abstention is neither appropriate nor warranted with respect to these actions, such that they

will therefore be heard in this Court.

# I. <u>INTRODUCTION</u>

The motions presently before the Court relate to two separate groups of defendants, all of

whom purchased oil and gas from the Debtors.  The first two motions (collectively, the "Tender

Parties Motions") [Adv. No. 10-51825, Docket No. 4; and Adv. No. 10-51797, Docket No. 3]

relate to the "Tender Parties," so called because they tendered funds into the Debtors' estates

during the pendency of the Debtors' consolidated bankruptcy cases on account of the amounts

they owed the Debtors for the oil and gas that they purchased from the Debtors.[4]  The Tender

Parties played an active role in the Debtors' consolidated bankruptcy cases, and the Court has

already considered and ruled upon its subject matter jurisdiction over the adversaries filed in the

Court by the Tender Parties (the "Tender Adversaries") against certain Producers,[5] seeking a

---

[4]     The Tender Parties are B.P. Oil Supply Company ("B.P."), ConocoPhilips Company ("Conoco"), J. Aron & Company ("J. Aron"), and Plains Marketing, L.P. ("Plains").

[5]     The Producers include Samson; New Dominion, L.L.C.; Arrow Oil & Gas, Inc.; Chesapeake Energy Marketing, Inc.; Special Energy Corporation; DC Energy, Inc.; Thunder Oil and Gas, L.L.C.; Veenker Resources, Inc.; Lance Ruffel Oil & Gas Corporation; JMA Energy Company, L.L.C.; LCS Production Company; Murfin Drilling Company, Inc.; Vess Oil Corporation; LD Drilling, Inc.; Davis Petroleum, Inc.; RAMA Operating Company, Inc.; Mull Drilling Company, Inc.; D E Exploration, Inc.; Braden-Deem, Inc.; Dunne Equities, Inc.; Lario Oil & Gas Company; McCoy Petroleum Corporation; W.D. Short Oil Company, L.L.C.; Short & Short, L.L.C.; Tempest Energy Resources, L.P; Calvin Noah; CMX, Inc.; L&J Oil Properties, Inc.; McGinness Oil Company of Kansas, Inc.; Daystar Petroleum, Inc.; F.G. Holl Company, L.L.C.; GRA EX, L.L.C.; V.J.I. Natural Resources, Inc.; J&D Investment Company; Landmark Resources, Inc.; Mid-Continent Energy Corporation; Molitor Oil, Inc.; Osborne Heirs Company; Pickrell Drilling Company, Inc.; Platte Valley Oil Company, Inc.; Midwest Energy, Inc.; Red Oak Energy, Inc.; Ritchie Exploration, Inc.; Thoroughbred Associates, L.L.C.; Viking Resources, Inc.; Vincent Oil; Wellstar Corporation; White Exploration, Inc.; and White Pine

declaratory judgment that their prior tender has relieved them of any obligation to the Producers on account of the oil and gas they purchased from the Debtors.  See ConocoPhillips Co. v. Bank of America, N.A. (In re SemCrude, L.P.), 428 B.R. 82, 100 (Bankr. D. Del. 2010) (finding that the Court possesses "related-to" subject matter jurisdiction over the Tender Adversaries), appeal dismissed, Civ. Nos. 10-447, 10-448, 10-449, 10-450, 10-451, 10-452, 10-452, 10-453, 10-454, 10-455, 10-456, 10-457, 10-458, 10-459, 10-460, 10-460, 10-461, 10-462, 10-463, 10-464, 10-465, 10-466, 10-467, 10-468, 10-469 (SLR), 2010 WL 4537921, at *5-6 (D. Del. Oct. 26, 2010). On July 30, 2010, the Court permitted the Tender Parties who had moved to amend their complaints in the Tender Adversaries to substitute the Producers not previously named as defendants for the "John Does 1 to 1,000" placeholder.[6]  It is these and other Producers who are the plaintiffs in the three actions at bar.  Through the Tender Parties Motions, the Producers ask the Court to find that it does not possess subject matter jurisdiction over the two actions by the Producers against the Tender Parties filed in and removed from Oklahoma and Kansas state courts, and subsequently transferred to this District and referred to this Court, or alternatively, to abstain from hearing these actions in favor of the courts in which they were originally filed.

The third motion (the "Non-Tender Parties Motion") [Adv. No. 10-51828, Docket No. 4] relates to numerous other downstream purchasers who purchased oil and gas from the Debtors, but did not tender funds into the Debtors' estates during the pendency of their consolidated bankruptcy cases, did not file lawsuits in this Court to determine their rights vis-à-vis the

---

Petroleum Corporation.

[6]    Adv. No. 09-51003, Docket No. 246; Adv. No. 09-50105, Docket No. 296; and Adv. No. 09-50038, Docket No. 331.  The Court notes that Conoco did not move to amend its complaint. However, given that it is similarly situated to the other Tender Parties, the Court's treatment of

Producers, and did not otherwise take an active role in the Debtors' consolidated bankruptcy cases (the "Non-Tender Parties,"[7] and collectively with the Tender Parties, the "Downstream Purchasers").  Through the Non-Tender Parties Motion, the Producers ask the Court to find that it does not possess subject matter jurisdiction over the action by the Producers against the Non-Tender Parties filed in and removed from Oklahoma state court, and subsequently transferred to this District and referred to this Court, or alternatively, to abstain from hearing this action in favor of the court in which it was originally filed.

## II. <u>BACKGROUND</u>

A.    **Factual Background**[8]

The litigation originates from a series of transactions that are not in material dispute.  The Producers own or operate oil and gas wells.  In the summer of 2008, before the Debtors filed for chapter 11 protection on July 22, 2008 (the "Petition Date"), the Producers delivered millions of dollars worth of oil and gas to the Debtors.  The Debtors then sold or transferred some of that oil and gas to the Downstream Purchasers.  The Debtors did not pay the Producers for any of the oil

---

Conoco for the purpose of deciding the Motions is identical to that of the other Tender Parties.

[7]    The Non-Tender Parties include Sunoco Logistics Partners, L.P. ("Sunoco"); Valero Marketing and Supply Company ("Valero"); National Cooperative Refinery Association ("National Cooperative"); Husky Marketing and Supply Company ("Husky"); Chevron Texaco L.P. ("Chevron"); Teppco Crude G.P., L.L.C. ("Teppco"); Cimarron Gathering, L.P. ("Cimarron"); Interstate Petroleum Corporation ("Interstate"); Occidental Energy Marketing, Inc. ("Occidental"); Oasis Transportation and Marketing Company ("Oasis"); Plains Marketing G.P., Inc. ("Plains"); Shell Oil Company ("Shell"); and Coffeyville Resource Refining and Marketing ("Coffeyville").

[8]    For general background about the Debtors and their consolidated bankruptcy cases, see <u>Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)</u>, 407 B.R. 140, 143-48 (Bankr. D. Del. 2009).

and gas delivered in the seven weeks leading up to the Petition Date.

The Producers have asserted that, under various state laws, they have the legal right to seek payment directly from the Downstream Purchasers because they have not been paid for the oil and gas that they had delivered to the Debtors.  In essence, the Producers contend that the transfer of "their" oil and gas from the Debtors to the Downstream Purchasers occurred subject to the Producers' state law lien claims and/or trust rights.  The Downstream Purchasers, on the other hand, contend that they purchased the oil and gas from the Debtors free and clear of any liens, claims, and encumbrances.

**B.    Procedural Background**

Though the Producers insist that the actions at bar are distinct from and unaffected by related disputes between the parties in these actions and those between similarly situated parties in various other proceedings before the Court during the pendency of the Debtors' consolidated bankruptcy cases, a review of such disputes is necessary to understand the context in which the instant actions have arisen.[9]

During the Debtors' consolidated bankruptcy cases, certain Producers from eight states sought declaratory judgments concerning their asserted lien claims and/or trust rights vis-à-vis the Debtors and the Debtors' secured lenders.  In an attempt to prevent a multiplicity of actions, to preserve the resources of the Debtors, and in the interest of judicial economy, the Debtors filed a motion for authorization to establish omnibus procedures for, inter alia, the resolution of the Producers' rights and the priorities of their claims pursuant to 11 U.S.C. §§ 105(a) and 362 and

---

[9]    In addition, this Opinion should be read in conjunction with the Court's related decision of the same date, resolving nearly identical issues among similarly situated parties.

pursuant to Federal Rule of Bankruptcy Procedure 9019(a) [Case No. 08-11525, Docket No. 600].  Following the filing of that motion, the representatives of certain Producers met with representatives of the Debtors to discuss such potential procedures.  After extensive negotiations, the Debtors and the Producers reached agreement on a set of procedures that could be used to resolve the disputes between the Producers, the Debtors, and the Debtors' secured lenders, and presented these procedures to the Court for approval on September 17, 2008.  The Court entered two orders (the "Producer Claims Procedures Orders") adopting these proposed procedures [Case No. 08-11525, Docket Nos. 1425 and 1557].  In addition, by an order dated October 15, 2008, the Court directed the U.S. Trustee to appoint and constitute a committee to represent the interests of the Producers (the "Producers' Committee") [Case No. 08-11525, Docket No. 1774]. The Producers' Committee had the same counsel as the Producers who filed the actions at bar, though these Producers are not listed by name in the filings by the Producers' Committee during the pendency of the Debtors' consolidated bankruptcy cases.

The Producer Claims Procedures Orders approved by the Court called for the Producers to initiate one adversary proceeding against the Debtors for each state in which the Producers sold oil or gas to the Debtors, for a total of eight states.  The purpose of these adversary proceedings was for the Producers to obtain a declaratory judgment from the Court establishing (i) what rights, if any, are afforded by each respective state's laws to a producer of oil or natural gas who sells oil or natural gas to a first purchaser such as the Debtors here, and (ii) the priority of these rights relative to the security interests in the Debtors' existing and after-acquired inventory asserted by the Debtors' secured lenders.

Any and all Producers were free to participate in this litigation (the "Producers

10

Litigation"), and the Producer Claims Procedures Orders expressly provided that the results of the litigation would be binding upon all Producers irrespective of whether they actually participated in the litigation.  In a series of three opinions, this Court held that the secured lenders' duly perfected security interest in the Debtors' property arising under Article 9 is superior to the lien claims and trust rights purportedly granted under the state laws of Texas, Kansas, and Oklahoma.  See Arrow Oil & Gas, Inc. v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 112, 139 (Bankr. D. Del. 2009); Mull Drilling Co., Inc., v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 82, 110 (Bankr. D. Del. 2009); In re SemCrude, L.P., 407 B.R. at 156-57.

In addition, during the pendency of the Debtors' consolidated bankruptcy cases, each of the Tender Parties sought to offset their respective obligations to the Debtors and to remit to the Debtors' estates the net amounts owed to the Debtors for the purchased oil and gas.  Because the Tender Parties were concerned about the potential of double liability in the event that the Producers were successful in asserting their lien claims and/or trust rights, they initiated the aforementioned Tender Adversaries.  Each of the Tender Parties filed an adversary proceeding seeking a declaratory judgment from the Court that the tender of its net settlement amount to the Debtors constituted full performance such that it had no further obligation to the Debtors or any other party, including the Producers, on account of the pre-petition oil and gas it received from the Debtors.  The Tender Parties named several producers by name and included as defendants "John Does 1 to 1,000" to "include any individual or entity whose identity is not currently known who may assert some right or claim" against the Tender Parties related to their transactions with the Debtors.  See, e.g., Complaint ¶ 12, Adv. No. 09-51003, Docket No. 1.

One such Producer, Samson Resources Company ("Samson"), moved to dismiss the Tender Adversaries for lack of subject matter jurisdiction.  On April 9, 2010, the Court issued an opinion (the "April 9 Opinion") finding that it has subject matter jurisdiction over the Tender Adversaries because they are "related to" the Debtors' consolidated bankruptcy cases pursuant to 28 U.S.C. § 1334(b).  See In re SemCrude, 428 B.R. at 104.  The Court also rejected the collective requests by Samson and other Producers for the Court to abstain from hearing the Tender Adversaries in favor of allowing the Producers to continue to prosecute their state law claims against various Downstream Purchasers in Oklahoma, Texas, Kansas, and New Mexico state courts.  Id.

Shortly thereafter, the Producers filed the instant actions in Oklahoma and Kansas state courts against the Tender Parties and the Non-Tender Parties, seeking to assert their purported lien claims and/or trust rights against these Downstream Purchasers.  These actions were removed to federal court, and thereafter, the two federal judges[10] assigned to these actions have transferred venue to this District in contemplation of referral to this Court.[11]  These are the three actions at bar.

On July 30, 2010, the Court allowed the Tender Parties to amend their respective complaints in the Tender Adversaries[12] to include the various Producers who filed the instant

---

[10]    Judge Joe Heaton of the Western District of Oklahoma and Judge John W. Lungstrum of the District of Kansas.

[11]    See Order, July 23, 2010, Adv. No. 10-51828, Docket No. 1; Order, July 23, 2010, Adv. No. 10-51825, Docket No. 1; Order Granting Mot. to Transfer, Adv. No. 10-51797, Docket No. 1.

[12]    As noted above, Conoco did not move to amend its complaint.  However, given that it is similarly situated to the other Tender Parties, the Court's treatment of Conoco for the purpose of

actions but had not been previously included as defendants in the Tender Adversaries. See, e.g., Order of July 30, 2010, Adv. No. 09-50038, Docket No. 331.

## III. DISCUSSION

### A. The Court's Subject Matter Jurisdiction over the Claims Against the Tender Parties

Contrary to the Producers' contentions that they have been "shanghaied" into this Court against their will and against the fundamental notions of fair play," Motion ¶ 2, many of the Producers and their counsel have actually been active participants in the Debtors' bankruptcy proceedings held in the Court for the past two years. Indeed, many of the same Producers, with the same counsel, have sought similar relief through counterclaims in the Tender Adversaries in March 2009. In those counterclaims, these Producers asserted that the Court has core jurisdiction over the claims.

In addition, the Tender Parties anticipated these actions filed against them by the various Producers when they listed as defendants numerous similarly situated Producers using the placeholder "John Does 1 to 1,000" to account for other Producers who had yet to assert the same claims against the Tender Parties. For this reason, and because of the liberal standard governing amendments to pleadings under Federal Rule of Civil Procedure 15, the Court allowed the Tender Parties to amend their complaints to add the various Producers who had not yet been listed by name in the complaints in the Tender Adversaries. See, e.g., Order of July 30, 2010, Adv. No. 09-50038, Docket No. 331. Consequently, and as a result of the Producers' own counterclaims in the Tender Adversaries, the April 9 Opinion, which found that the Court has subject matter jurisdiction over the Tender Adversaries, is binding on the newly added Producers

---

deciding the Motions is identical to that of the other Tender Parties.

if the Tender Parties' recent amendments adding these Producers "relate back" under Rule 15(c) to the filing of the complaints in the Tender Adversaries.

Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" if three relevant conditions are met. First, Rule 15(c)(1)(B) must be satisfied, which provides that "the amendment asserts a claim or defense that arose of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." Second, the parties brought in by the amendment must have "received such notice of the action that [they] will not be prejudiced in defending on the merits." Third, those parties "knew or should have known that the [claims] would have been brought against [them], but for a mistake concerning the proper party's identity." Fed. R. Civ. P 15(c).

Each of the requirements of Rule 15(c) is satisfied here. First, the Producers' claims in these actions clearly arise from the same conduct and transactions set out in the original pleading: the Tender Parties' purchase of oil and gas from the Debtors, which the Debtors had previously purchased from Producers. Second, the record supports the finding that the various Producers brought in as additional defendants in the Tender Adversaries pursuant to the amendments[13] had received notice of the Tender Adversaries within the period provided by Federal Rule of Civil Procedure 4(m). The required notice may be "actual, constructive, implied or imputed." Davis v. Corr. Med. Sys., 480 F. Supp. 2d 754, 761 (D. Del. 2007). Based upon the proceedings in the Debtors' consolidated bankruptcy cases, the Court finds that the Producers had implied or imputed notice of the Tender Adversaries. Some of the Producers participated in

---

[13]    Replacing a "John Doe" caption with a party's real name amounts to 'changing a party' within the meaning of Rule 15(c). Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir. 1977).

the Tender Adversaries.  Without a doubt, the Tender Adversaries were a major event in the

Debtors' consolidated bankruptcy cases.  Each of the Producers paid enough attention to the

Debtors' consolidated bankruptcy cases that they filed proofs of claim.  Their counsel,

representing similarly situated Producers, were key participants in the hotly contested Producers

Litigation and in the Tender Adversaries.  In fact, counsel for the Producers' Committee

admitted at a hearing that he represented the parties listed as "John Does" in the Tender

Adversaries, suggesting that he was in communication with the Producers who later emerged to

file the actions at bar.  See Feb. 26, 2009 Hr'g Tr. at 20:1-4 [Adv. No. 08-51444, Docket No. 88]

(Mr. Ray: "I know John Doe.  John Doe is one of my constituents.).  "[W]hen an originally

named party and the parties added are represented by the same attorney, the attorney is likely to

have communicated to the latter party that he may very well be joined in the action."  Davis, 480

F. Supp. at 761.  The Court is therefore persuaded that all relevant Producers have been

sufficiently aware of the Tender Adversaries.

Third, the Producers "knew or should have known that the [claims in the Tender

Adversaries] would have been brought against [them]," but for the omission of certain named

Producers because of the Tender Parties' lack of knowledge as to their particular identity.  The

Third Circuit has held that "a 'mistake' is no less a 'mistake' when it flows from lack of

knowledge as opposed to inaccurate description."  Arthur v. Maersk, Inc., 434 F.3d 196, 208 (3d

Cir. 2006).  Moreover, the United States Supreme Court recently clarified that it is not the

Tender Parties' knowledge as plaintiffs that is relevant, but the Producers' knowledge as

potential defendants.  Krupski v. Costa Crociere S.P.A., 130 S. Ct. 2485, 2488 (2010) (finding

that the defendant's state of mind, not the plaintiff's state of mind, is relevant when considering

Rule 15(c)).  The inquiry is thus whether the Producers who were recently added to the complaints in the Tender Adversaries knew or should have known that they would have been named but for the Tender Parties' lack of knowledge as to their particular identity.

The Court is thus persuaded that all relevant Producers knew or should have known that they were likely to be defendants in the Tender Adversaries, and that they were the parties intended to be captured as "John Does."  Each of these Producers knew or should have known that it was an "individual or entity whose identity is not currently known who may assert some right or claim to the [tender amounts] . . . and/or the subject matter of the Crude Contract or the transactions thereunder."  Complaint ¶ 12, Adv. No. 09-51003, Docket No. 1.  Had the Tender Parties known the identities of each of the additional Producers who would assert claims against them, they would have undoubtedly added these Producers to the complaints filed in the Tender Adversaries.  The Court is persuaded, however, that the Tender Parties could not have known the identities of all Producers until these Producers in fact asserted their claims against the Tender Parties.  Accordingly, the amendment of the complaints in the Tender Adversaries to add certain Producers who had not been previously named as defendants relates back to the time when the these complaints had been initially filed.  The April 9 Opinion is therefore binding on these and other Producers.

Accordingly, given that the Court has subject matter jurisdiction over the Tender Adversaries, which now include the claims against the newly added Producers, who are among the plaintiffs in the two actions at bar involving the Tender Parties, the Court also has subject matter jurisdiction over these actions.  The Tender Adversaries and the instant actions are but two sides of the same coin, requiring the resolution of the same issues between the same parties.

16

The disposition of the Tender Adversaries, which were filed first, would dispose of the instant actions and consequently render them superfluous under principles of res judicata.  But, in any event, the Court has subject matter jurisdiction over the actions at bar that involve the Tender Parties for the same reasons that it has jurisdiction over the Tender Adversaries articulated in the April 9 Opinion.

**B.**    **The Court's Subject Matter Jurisdiction over the Claims Against the Non-Tender Parties**

Unlike the Tender Parties, the Non-Tender Parties who are defendants in one of the actions at bar did not file lawsuits in the Court seeking a declaratory judgment of their rights vis-à-vis the Producers during the pendency of the Debtors' consolidated bankruptcy cases.  Some of the Non-Tender Parties filed proofs of claim, while others did not.[14]  Nevertheless, at bottom, the transferred actions involving the Tender Parties and the Non-Tender Parties (1) arise from the same set of operative facts; (2) arise from the same transactions; (3) arise from the same occurrences; (4) allege the same claims and causes of action; (5) will impose the same discovery demands upon the Debtors; (6) will require the Court to interpret its prior orders; and (7) relate to the same jurisdictional inquiry already addressed by this Court in the April 9 Opinion.  The primary difference—indeed the only meaningful difference—between the action specifically against the Non-Tender Parties and those against the Tender Parties is that the Non-Tender Parties are not already parties to the pre-confirmation Tender Adversaries or Producers Litigation.

---

[14]    The Court will separately addresses those Non-Tender Parties who did not file any proofs of claim infra.

1.    **Core Jurisdiction**

Section 157 of the Bankruptcy Code divides bankruptcy matters into two categories: core and non-core.  A bankruptcy judge has the power to "hear, decide and enter final orders and judgments" in a core proceeding.  Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999) (internal citations omitted); see 28 U.S.C. § 157(b)(1).  A bankruptcy judge also has the power to hear non-core proceedings: "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."  28 U.S.C. § 157(c)(1).  A bankruptcy court's power over non-core proceedings is limited to submitting proposed findings of fact and conclusions of law to the district court.  Id.

The Third Circuit has held that a matter is core if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."  In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991).  In the April 9 Opinion, the Court found that, with respect to the dispute between the Tender Parties and the Producers raised in the Tender Adversaries, "any relationship to the estate this dispute bears is too attenuated to be called core."  In re SemCrude, 428 B.R. at 95.  The Court reached this finding in part because the claims asserted by the Tender Parties against the Producers are not among those that could only arise in the context of a bankruptcy case, and because the cases were primarily between non-debtors.  Id.  The claims raised in the Tender Adversaries are, if anything, more closely related to the Debtors' consolidated bankruptcy cases than are the claims asserted by the Producers against the Non-Tender Parties in the instant action.  Accordingly, for the same reasons stated in the April 9 Opinion, the Court finds that the transferred action at bar specifically involving the Non-Tender Parties is likewise too remote from the Debtors'

18

consolidated bankruptcy cases to be called core.

### 2.      "First-Filed" Rule

The Non-Tender Parties urge this Court to apply the "first-filed" rule, designate the

Tender Adversaries as the "first-filed" cases, and use the dates of their filings as the relevant

dates for the jurisdictional analysis concerning the transferred action at bar involving the Non-

Tender Parties.

The "first-filed" rule provides that "in all cases of federal concurrent jurisdiction, the

court which first has possession of the subject matter must decide it." E.E.O.C. v. Univ. of Pa.,

850 F.2d 969, 971 (3d Cir. 1988).  The goal of this rule is to "avoid differing outcomes on the

same issue by two sister courts, thereby minimizing duplicative litigation in different fora, and

saving judicial resources." Freedom Mortgage Corp. v. Irwin Fin. Corp., 2009 U.S. Dist. LEXIS

24208, at *12 (D. Del. Mar. 23, 2009).  However, the "first-filed" rule presupposes the Court's

proper subject jurisdiction over an action and does not itself provide an independent basis for

finding jurisdiction where it otherwise does not exist.  Thus, the "first-filed" rule, on its own with

nothing more, does not provide the Court with a basis for finding subject matter jurisdiction over

the transferred action involving the Non-Tender Parties.

### 3.      "Close Nexus"

Nonetheless, the Court finds that it has subject matter jurisdiction over the transferred

action by the Producers against the Non-Tender Parties based upon its grant of "related-to"

jurisdiction pursuant to 28 U.S.C. § 1334(b).  "Related-to" jurisdiction has been the subject of

considerable case law in the Third Circuit as well as other circuits.  The seminal case in this

Circuit on the subject of "related-to" jurisdiction is Pacor, Inc. v. Higgins (In re Pacor, Inc.), 743

F.2d 984 (3d Cir. 1984) (overruled on other grounds).  Under In re Pacor, "related-to"

jurisdiction exists if "the outcome of [a] proceeding could conceivably have any effect on the

estate being administered in bankruptcy."  Id. at 994.

However, In re Pacor is insufficient to assess "related-to" jurisdiction over the transferred

action relating to the Non-Tender Parties because this action was filed after the Court had

confirmed the Debtors' plan of reorganization.  Consequently, the "close nexus" standard is

applied "for the purposes of determining whether a federal court has jurisdiction over a non-core

'related-to' proceeding in the post-confirmation context."  Geruschat v. Ernst Young LLP (In re

Seven Fields Dev. Corp.), 505 F.3d 237, 260 (3d Cir. 2007) (citing Binder v. Price Waterhouse

Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 164-67 (3d Cir. 2004)).  A "close nexus" between a

debtor's bankruptcy case and a related action can be established if the action would "affect an

integral aspect of the bankruptcy process."  In re Resorts at 167.  "Matters that affect the

interpretation, implementation, consummation, execution, or administration of the confirmed

plan will typically have the requisite close nexus."  Id.

Several factors establish a "close nexus" between the claims by the Producers against the

Non-Tender Parties and the Debtors' consolidated bankruptcy cases.  First, the record reflects

that substantially all of the Non-Tender Parties have filed proofs of claim in the Debtors'

consolidated bankruptcy cases, asserting either contractual warranty and indemnification

provisions or 11 U.S.C. § 503(b)(9) claims.  Various Non-Tender Parties have also set off the

value of the oil and gas they delivered to the Debtors after the Petition Date against the value of

oil and gas they had received from the Debtors in the pre-petition period, and the agreements that

effectuated such setoffs were largely incorporated into the Debtors' plan.  To the extent that

20

these setoffs are not honored or are otherwise unwound, the Non-Tender Parties will presumably

pursue additional claims against the Debtors.  The resolution of the Producers' claims against

these Non-Tender Parties, and the subsequent claims against the Debtors that the Non-Tender

Parties will invariably pursue in the event that they are found liable to the Producers, will likely

invoke the basic bargains that were struck by the relevant parties in the plan.

Therefore, at minimum, the Court's confirmation order will be central to the adjudication

of the Producers' claims against these Non-Tender Parties.  The Supreme Court recently

reaffirmed the jurisdiction of a bankruptcy court to construe its own orders.  See Travelers

Indem. Co. v. Bailey, 129 S.Ct. 2195, 2202 (2009) (upholding bankruptcy court's jurisdiction to

construe its own orders more than twenty years post-confirmation).  Among the other orders that

will likely be construed are various releases, cash collateral and DIP financing orders, and this

Court's own prior opinions relating to the issues raised at bar.  Each of these documents was

shaped and informed by the respective parties' rights and interests, as determined by the Court,

in the context of exceedingly complex and interrelated bankruptcy proceedings.  Finally, in the

event that a court decides in favor of the substantive relief sought by the Producers, that court

will likely have to interpret the distributions allowed under the Debtors' plan, which contains

various (and disputed) caps, recovery rates, class treatment, and the effect of releases, to

determine the amount, if any, that the Producers may still be entitled to collect from the Non-

Tender Parties.

Second, pursuant to the Court's confirmation order, the Debtors are required to

"cooperate in any discovery" in "any other litigation by oil and gas producers against [the

Downstream Purchasers] relating to oil and gas [the Downstream Purchasers] purchased from the

Debtors." Such compliance with respect to the action at bar, along with other related disputes between the Producers and the Downstream Purchasers, could prove to be a substantial burden on the Debtors, especially considering the effort and hours that already have been expended on this litigation. Consequently, this burden could affect the administration of the Debtors' consolidated bankruptcy cases.

The Court notes that the record currently reflects that Oasis is the only one of the Non-Tender Parties who has not filed a proof of claim in the Debtors' consolidated bankruptcy cases. To the extent that the Court determines that Oasis and/or other similarly situated Non-Tender Parties have not filed claims against the Debtors, such Non-Tender Parties will be treated as "No-Claim Parties." Without a proof of claim or other similar basis for establishing post-confirmation "related-to" jurisdiction based upon the showing of a "close nexus" between the Producers' claims against the No-Claim Parties, the Court finds that it lacks subject matter jurisdiction over these specific claims. The Court will retain the instant action against the Non-Tender Parties but will dismiss the Producers' claims against the No-Claim Parties therein.[15] The remainder of the Non-Tender Parties who are determined to hold valid claims against the Debtors will be treated as "Claim Parties." For the reasons discussed above, the Court finds that the adjudication of the Producers' claims against the Claim Parties and its impact on the Debtors has the requisite "close nexus" to the Debtors' consolidated bankruptcy cases.

### 4.    No Additional Lawsuits are Required

Although the Producers insist that the limitation to "related-to" jurisdiction set forth in

---

[15]    The Court notes that such dismissal is without prejudice to the plaintiffs' right to litigate these claims in the forum in which such claims were instituted.

<u>W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)</u>, 591 F.3d 164, 172 (3d Cir. 2009),

applies to the action involving the Non-Tender Parties, the Court disagrees. In <u>In re W.R. Grace</u>,

the Third Circuit held that "there is no related-to jurisdiction over a third-party claim if there

would need to be another lawsuit before the third-party claim could have any impact on the

bankruptcy proceedings." <u>Id.</u>  In that case, the court found that a debtor would not be bound by

any judgment against a third party resulting from litigation between non-debtors absent an

intervening or subsequent action against the debtor brought by the losing non-debtor.  <u>Id.</u>

Specifically, for a debtor to incur any liability on account of such third-party litigation, the third

party adjudicated liable in such litigation would first have to file a separate action against the

debtor for indemnity or contribution in the Court, and thereafter prevail on its action against the

debtor.  <u>Id.</u> at 172-73.

Here, as previously discussed, the record reflects that the Claim Parties have all filed

proofs of claim in the Debtors' consolidated bankruptcy cases, either based upon alleged

contractual warranty and indemnification provisions, 11 U.S.C. § 503(b)(9) claims, or setoff

claims.  Therefore, the Non-Tender Parties have preexisting claims against the Debtors, which

are likely to be affected in the event that the Producers prevail on their claims against this set of

Non-Tender Parties.  As such, the Claim Parties will not need to bring additional lawsuits against

the Debtors in order to seek indemnity, contribution, reimbursement, or similar remedies, all of

which would likely affect the administration of the Debtors' plan.  Thus, <u>In re W.R. Grace</u> does

not restrict the Court's jurisdiction over the Producers' claims against the Claim Parties.

**C.**      **<u>The Court Will Not Abstain from Hearing the Claims Against the Tender Parties
and the Non-Tender Parties</u>**

Having determined that the Court has subject matter jurisdiction over the transferred

claims against both the Tender Parties and the Claim Parties, the Court now considers whether it must or should abstain from hearing these actions in favor of allowing them to go forward in Oklahoma and Kansas state courts.

### 1.    Mandatory Abstention

The Producers argue that this Court is required to abstain from hearing the transferred actions against the Tender Parties and the Non-Tender Parties under 28 U.S.C. § 1334(c)(2). Under § 1334(c)(2), there are six requirements for mandatory abstention: (i) the motion to abstain is timely; (ii) the action is based upon a state law claim or cause of action; (iii) an action has been commenced in state court; (iv) the action can be timely adjudicated in state court; (v) there is no independent basis for federal jurisdiction which would have permitted the action to be commenced in federal court absent bankruptcy; and (vi) the matter is non-core and is only related to a case under title 11.  See In re LaRoche Indus., Inc., 312 B.R. 249, 252-253 (Bankr. D. Del. 2004).  A party moving for mandatory abstention "must meet all the requirements of mandatory abstention for relief to be granted."  In re Mobile Tool Int'l, Inc., 320 B.R. 552, 556 (Bankr. D. Del. 2005).

The Court finds that mandatory abstention is not appropriate with respect to the transferred actions because the Producers have not carried their burden to show that these actions can be timely adjudicated in state court.[16]  Although the Producers assert that the state courts in which the transferred actions were filed are capable of adjudicating these cases, "[a] naked

---

[16]    In the context of the Tender Adversaries, the Court held that mandatory abstention did not apply, chiefly because an appropriate action had not been commenced in state court.  See In re SemCrude, 428 B.R. at 101. This rationale does not apply here because the transferred actions were initially filed in state court.

assertion that the matter can be timely adjudicated in the state court, without more is insufficient to satisfy this requirement." In re Allied Mech. & Plumbing Corp., 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986) (citing In re Burgess, 51 B.R. 300, 302 (Bankr. S.D. Ohio 1985)). The Producers have not presented any evidence sufficient to demonstrate that the transferred actions could be timely adjudicated in state court. Georgou v. Fritzshall (In re Georgou), 157 B.R. 847, 851 (N.D. Ill. 1993) (finding that the moving party must present evidence to show that a state court action can be timely adjudicated). Therefore, without evidence to the contrary, the Court has significant concerns as to whether these actions can be timely adjudicated in Oklahoma and Kansas state courts. These lawsuits are in their infancy, and have been thus far characterized by motion practice devoted exclusively to procedure and venue. Borrowing a phrase from the United States District Court for the Southern District of New York in the same context, these cases are still "at the starting line" in the state courts. Renaissance Cosmetics, Inc. v. Dev. Specialists Inc., 277 B.R. 5, 14 (S.D.N.Y. 2002).

In another case, the Southern District of New York also found that abstention was inapplicable with respect to various lawsuits between non-debtor entities, specifically investors who sued the stockbrokers and the founder of the debtor corporation. Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Securities Litigation), 311 B.R. 345, 348-49 (S.D.N.Y. 2003). In that case, the plaintiffs alleged fraud against the defendants in two separate actions both filed in Mississippi state court, seeking damages for the losses they sustained when the value of the debtor corporation's securities plummeted. Id. at 346-47. The court found that it had "related-to" subject matter jurisdiction over these two actions because the outcome of the actions could lead to contribution claims against the debtor and therefore "certainly have a

'conceivable effect' on the bankrupt estate." Id. at 347.  In support of their arguments for

abstention, the plaintiffs submitted (1) a Mississippi Supreme Court rule that provided for the

disposition of civil cases in Mississippi's Chancery Court within eighteen months of the filing

date, and (2) a certification from the administrator of the Chancery Court stating that a trial date

would be set within approximately six months of remand.  Id. at 348.  However, the court was

not persuaded by this evidence and expressed no doubt that the "resolution of the complex issues

asserted by plaintiffs in their fraud claims will be anything but speedy, and indeed that the

pendency of multiple proceedings in multiple jurisdictions will contribute to slowing down the

resolution of [these] claims in any court."  Id. at 348.  The court further explained that the

purpose of abstention would be ill-served in this context:

> In short, § 1334(c)(2) is intended to require federal courts to defer
> to the state courts to handle lawsuits which, although "related to" a
> bankruptcy, can be promptly resolved in state court without
> interfering with the proceedings pending in the federal courts.
> That intention simply has no application to litigation of this sort, in
> which a case properly removed to federal court is intertwined both
> with complex bankruptcy proceedings and equally complex
> securities class actions pending in federal court.   Far from
> promoting "timely adjudicat[ion]" of plaintiffs' claims, to remand
> here would simply complicate and slow down the resolution of
> those claims, as well as of the matters already pending before this
> Court.

Id. at 349.

Here, the resolution of the Producers' claims against the Tender Parties and the Claim

Parties, like the resolution of the contemplated non-debtor litigation in In re Global Crossing, is

likely to involve complex legal and factual issues.  See In re SemCrude, 407 B.R. at 143 (Bankr.

D. Del. 2009) (noting that the existence and priority of certain asserted lien claims and/or trust

rights under Oklahoma state law is an issue of first impression).  However, it is worth noting that

In re Global Crossing involved only two actions, which that court characterized in the aggregate as "multiple proceedings," whereas abstention here implicates three transferred actions involving multiple plaintiffs and defendants.

Furthermore, the actions against the Tender Parties and the Claim Parties will eventually need to be heard on the merits, and pretrial motion practice and discovery presumably will ensue. To be sure, the Court intends no disrespect to its sister courts, but it is simply not plausible to suggest that these three actions will be administered promptly and efficiently in separate proceedings and in different jurisdictions. New York City Employees' Retirement System v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308, 331 (S.D.N.Y. 2003) ("If each of the actions removed from state court were remanded, it would lead to duplicative motion practice and repetitious discovery, as well as requiring common issues to be resolved separately by courts across the country."). Moreover, the Court's familiarity with the parties and the issues, forged over the past several years, is likely to aid in the prompt and efficient adjudication of the disputes between the Producers and the Downstream Purchasers generally.[17]  There is no immediately apparent mechanism for the reliable consolidation and coordination of these claims outside this Court, and as noted above, it appears likely that the Debtors will be required to participate in the adjudication of these disputes, at a minimum to respond to discovery demands from all litigants. Accordingly, the Court finds that the Producers have not established that mandatory abstention is either appropriate or warranted with respect to the actions at bar against the Tender Parties and the Claim Parties.

---

[17]    The Court will direct the parties involved in the claims by Samson against the Tender Parties and the Claim Parties to meet and confer to develop a consolidated scheduling order to ensure the orderly administration of these claims.  See Part IV infra.

2.    **Permissive Abstention**

The Producers also urge the Court to exercise its discretionary authority to abstain from hearing the actions against the Tender Parties and Non-Tender Parties pursuant to 28 U.S.C. § 1334(c)(1).[18]  Courts have identified the following twelve factors as relevant to determining the propriety of permissive abstention: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced by the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.  In re Mobile Tool, 320 B.R. at 556-57.

A number of these factors weigh in favor of abstention.  For example, the Court will be called upon to interpret state laws and regulations governing the oil and gas industry, including questions that appear largely unsettled.  Moreover, the transferred claims against the Tender

---

[18]    28 U.S.C. § 1334(c)(1) provides, in relevant part: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

Parties and the Claim Parties involve non-debtor entities, and this Court's subject matter jurisdiction is, as discussed above, predicated solely upon 28 U.S.C. § 1334(b).

On the other hand, the resolution of these issues will require the construction of the Court's prior orders and rulings. Additionally, and again with all due respect to our sister courts, it appears that the Court is well-positioned to provide for the efficient administration of the three actions at bar asserting claims against the Tender Parties and the Claim Parties. The Court has had the unique opportunity to become familiar with the factual background and the parties over the past several years, and it is prepared to provide a single forum to concurrently consider all such (and other related) claims. Ultimately, the disposition of each of the claims at bar, against both the Tender Parties and the Claim Parties, will be grounded in the same factual and legal bases such that considerations of fairness and efficiency favor the consolidated adjudication of these claims. The Court therefore may be the only forum that is able to consolidate these claims and is available to at once uniformly and efficiently adjudicate all claims that may have an impact on the Debtors asserted by the Producers against the Downstream Purchasers. In re Global Crossing, 311 B.R. at 350 (finding that the desirability of maintaining two actions related to the debtor's bankruptcy in one forum clearly militates against abstention); In re WorldCom, 293 B.R. at 333-34 ("[I]f this Court were to abstain pursuant to Section 1334(c)(1) and remand the litigation originally filed in state court, motion practice and discovery would proceed separately in many jurisdictions. The litigation that would ensue in the various fora would be entirely duplicative and wasteful.").

Given these countervailing considerations, if the Court were considering permissive abstention on a blank slate, whether to retain the transferred actions asserting claims against the

Tender Parties or whether to send them back for adjudication in Oklahoma and Kansas would perhaps be a close question.  However, the Court does not write on a blank slate in this regard.  In addition to the Court's own prior ruling in the Tender Adversaries,[19] two federal judges have transferred venue of these actions.  The law of the case doctrine counsels that the transfer decisions of other courts should be respected insofar as jurisdiction plausibly lies in this Court.  See Christianson, 486 U.S. 800, 816 (1988).  Moreover, to the extent that the Court's prior experience enables it to provide prompt and coordinated administration for the actions against the Tender Parties and the Claim Parties, the interests of all parties will be best served if the Court retains the transferred actions.  For these reasons, and for the reasons given by the Court in the April 9 Opinion, the Court does not find that permissive abstention as to the transferred actions is either appropriate or warranted.  Accordingly, the Court will not permissively abstain from hearing the instant actions asserting claims against the Tender Parties and Claim Parties.

## IV.  BRIEFING AND DISCOVERY ISSUES

Having determined that the Court possesses subject matter jurisdiction over the claims asserted by the Producers against the Tender Parties and the Claim Parties in the transferred actions at bar, the Court directs the parties to these claims to meet and confer to develop and submit to the Court an agreed-upon and consolidated briefing and discovery schedule to ensure the prompt and orderly administration of these claims.  This scheduling order should cover, inter alia, the timelines for discovery, dispositive motion practice, and other pretrial proceedings, and suggested trial dates.  Pursuant to 11 U.S.C. § 105(d), the Court has scheduled a status conference for February 24, 2011 to consider entry of such a scheduling order.

---

[19]    See In re SemCrude, 428 B.R. at 101.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that it has subject matter jurisdiction over the claims asserted by the Producers against the Tender Parties and the Claim Parties in the transferred actions at bar.  The Court finds that abstention with respect to these actions is inappropriate and unwarranted, and thus the Court will not abstain from hearing the claims against the Tender Parties and the Claim Parties.  However, the Court finds that it lacks subject matter jurisdiction over the individual claims asserted by the Producers against the No-Claim Parties that are included in the transferred action against the Non-Tender Parties.

The Tender Parties Motions and the Non-Tender Parties Motion will be denied to the extent that they request the Court to abstain, retransfer, and remand the transferred actions.  The Court will therefore retain these actions, but will dismiss from the transferred action against the Non-Tender Parties any individual claims asserted against the No-Claim Parties, viz., Oasis Transportation and Marketing Company, therein.[20]

In the interest of efficient and prompt administration of this litigation, the Court will conduct a status conference on February 24, 2011 for the purpose of considering entry of a consolidated scheduling order.

---

[20]    The Court will dismiss the Producers' claims against the No-Claim Parties in adversary proceeding 10-51828.  Dismissal is without prejudice to the plaintiffs' right to pursue such claims in the court in which the action was initiated.

An appropriate Order follows.

BY THE COURT:

Dated:        Wilmington, Delaware
              December 13, 2010        Brendan Linehan Shannon
                                       United States Bankruptcy Judge